IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-30930
Summary Calendar

_____


CHERIE FOUQUET, wife of Robert A. Fouquet, Sr., ROBERT A.
FOUQUET, SR., individually, for and on behalf of their
minor children, Stacie Fouquet, Bobby Fouquet, Daniel
Fouquet, Jenny Fouquet, Ashley Fouquet, Rebecca Fouquet,
Christen Fouquet, Elizabeth Fouquet and Kelly Fouquet and
LIBERTY TOMENY, individually and on behalf of her minor
son Jeffrey,

                              Plaintiffs-Appellants,

                    versus

PATRICK J. CANULETTE, Sheriff, of St. Tammany Parish,
CATHY PORTER, LARRY CIKO and JAMES RICHARD,

                              Defendants-Appellees.
_____

        Appeal from the United States District Court for
              the Eastern District of Louisiana
                       (95-CV-615)
_____

                     July 3, 1997
Before REAVLEY, JONES and STEWART, Circuit Judges.

PER CURIAM:[*]

    Cherie Fouquet, on behalf of herself and her minor children,

appeals the district court's order granting summary judgment to

appellees on her 42 U.S.C. § 1983 claim.  Mrs. Fouquet brought this

_____

    [*]  Pursuant to 5th Cir. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5th Cir. R. 47.5.4.

action against the St. Tammany Parish Sheriff's Department and individual employees alleging that she and her husband were unlawfully arrested. The district court found that appellees were entitled to qualified immunity and granted summary judgment on the § 1983 claim, and dismissed Mrs. Fouquet's pendent state law claims without prejudice. Finding no error, we affirm.

The Fouquets founded and operated the Agape Christian Ministries, and provided a home for abused or neglected children. Richard Fouquet, Cherie's now deceased husband, was arrested for indecent behavior with juveniles, molestation of a juvenile, and cruelty to juveniles in violation of Louisiana law. Cherie was arrested for being an accessory after the fact to the felony crimes of her husband. The Fouquets were arrested pursuant to a valid arrest warrant, but the district attorney declined to charge and prosecute the Fouquets. The Fouquets filed the present action claiming that probable cause did not exist to support the arrest warrant, and that the Sheriff's Department and its deputies violated the Fouquets' constitutional right to be free from unlawful arrest.

The following facts are undisputed. Jane Doe I reported that Robert Fouquet had committed sexual acts of kissing, fondling, oral sex, and digital penetration while she was living in the Fouquet home. Jane Doe I also reported that Robert Fouquet subjected children in the Fouquet home to pain and suffering by beating the children. In May and June 1994, the Sheriff's Department conducted

2

an investigation into Jane Doe I's allegations, which included interviews with all of the children and the Fouquets. Mark Fouquet, the Fouquets' twenty-year-old adopted son, initiated a second interview with deputies, during which he stated that he believed more girls were molested in the home and that the children were ordered by his parents to lie to the police regarding corporal punishment. Mark also stated that he personally witnessed Robert Fouquet ascend the stairs at night to the area where the girls slept. The initial investigation resulted in no arrests being made and was closed.

In October of 1994, Jane Doe II reported that Robert Fouquet had whipped her with a belt, slapped her in the face, and punched her in the face, and that she had witnessed other children in the home being similarly treated. Jane Doe II further reported that Robert Fouquet had entered the room where she, Jane Doe I and other girls slept at night, and had kissed her on her mouth and, on at least one occasion, had inserted his tongue in her mouth. Jane Doe II reported that Robert Fouquet had fondled her breasts, and that she was present in the room when Robert Fouquet went to Jane Doe I to kiss and touch her. She also stated that during the previous investigation, Cherie Fouquet had instructed the children to withhold information from the police regarding spankings and beatings. Based on this information, Detective Richard executed warrant affidavits and obtained arrest warrants.

3

Mrs. Fouquet does not contend that any of this information is false, nor does she claim that Detective Richard presented false statements in his warrant affidavit. Rather, Mrs. Fouquet contends that this evidence does not constitute probable cause, and that Detective Richard's failure to include other information in the affidavit constitutes reckless disregard for the truth. She argues that the district court erred by granting summary judgment on her § 1983 claim based on qualified immunity because there exists genuine issues of material fact as to the objective reasonableness of the deputies' actions.

We review the grant of summary judgment *de novo*, applying the same standard used by the district court and viewing all evidence in the light most favorable to the non-moving party. *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995).

Probable cause existed to arrest the Fouquets. Two girls living in the Fouquet home reported sexual misconduct by Robert Fouquet. Jane Doe II corroborated Jane Doe I's account of the felonious conduct. Both girls reported criminal beatings to themselves and others. Mark Fouquet and Jane Doe II reported that Cherie Fouquet instructed the children to remain silent about corporal punishment in the home. These facts and circumstances, of which Detective Richard had reasonably trustworthy information, are sufficient in themselves to cause a man of reasonable caution to believe that an offense has been or is being committed. This

4

constitutes probable cause. *Brinegar v. United States*, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 1310-11 (1949). Probable cause precludes a § 1983 suit for unlawful arrest. *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990).

Mrs. Fouquet contends that Detective Richard's warrant affidavit contained "blatant misrepresentations and material omissions" critical to a finding of probable cause. Allegations of omissions and misrepresentations are only relevant where they were made knowingly and intentionally, or with reckless disregard for the truth. *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980); *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 2676 (1978). Although Mrs. Fouquet asserts that Detective Richard recklessly disregarded the truth, there is no evidence to support such a contention. Moreover, the information Mrs. Fouquet claims was improperly omitted is not material and would not negate

probable cause if included in the affidavit.[1]  *See Martin*, 615 F.2d at 328.

Even if probable cause did not exist, the deputies were reasonable in their belief that it did.  Government officials performing discretionary functions are entitled to qualified immunity from civil damages liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."  *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038 (1987).  The qualified immunity

---

[1] Examples of what Mrs. Fouquet considers glaring omissions include the following: Mark Fouquet allegedly believed he would take over the ministry if his father went to jail; statements were made to the detectives during their investigation to the effect that Jane Doe I was a liar and sexually promiscuous; and three other children stated that they had not been abused.

Mrs. Fouquet also points to Detective Richard's statement in the affidavit regarding the conclusion of the first investigation. In the affidavit, Detective Richard states "[w]ith Jane Doe I's inability to return to this area, the case was closed unless further information becomes available." In his deposition, Detective Richard stated that at the close of the initial investigation, he had doubts about Jane Doe I's veracity. Mrs. Fouquet argues that the affidavit is misleading because it indicates to the magistrate that the first investigation was closed because of Jane Doe I's location, not her lack of credibility. However, Detective Richard's deposition does not show that he ended the investigation because of Jane Doe I's credibility, but that "at the conclusion of the investigation," he believed her to be a liar. There is no reason to believe that Jane Doe I's inability to return to the area was not a factor in closing the investigation, and there is nothing to suggest that Detective Richard intentionally or recklessly misled the magistrate. It was immaterial whether Detective Richard believed Jane Doe I to be a liar at the close of the first investigation since her story was corroborated by Jane Doe II, an individual Detective Richard considered trustworthy. More importantly, even if the information was included in the affidavit, probable cause still existed to believe a crime was committed in light of Jane Doe II's statements.

defense protects all but the plainly incompetent or those who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096 (1986). If reasonable public officials could differ as to the lawfulness of the official's actions, the official is entitled to qualified immunity. *Pfannstiel*, 918 F.2d at 1183. Thus, even if the conduct is actually violative of constitutional rights, the official is entitled to qualified immunity if the conduct was objectively reasonable. *Id.*

Considering all the information available to the detectives, including information omitted from the affidavit, it was objectively reasonable for them to believe probable cause existed to obtain and execute the warrants. The undisputed facts, especially Jane Doe II's corroboration of Jane Doe I's account, would, at the very least, cause reasonable police officers to differ as to the existence of probable cause. The district court was correct in its determination that appellees are entitled to qualified immunity.

Finally, Mrs. Fouquet contends that the district court erred by dismissing her pendent state law claims. A district court may decline to exercise supplemental jurisdiction over pendent state law claims if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). The district court did not abuse its discretion by dismissing without prejudice the state law claims after granting summary judgment on

7

the § 1983 claim.  *See Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 108 S.Ct. 614 (1988).


AFFIRMED.